We'll give you back your shoes. You'll have a more pleasant trip home. Thank you very much, Kevin. Next case is Kevin and Amy Imes v. Raymond Galasso & Ver, LLC, 2011-11-13. I'll be ready when you are, Mr. Marshall. Thank you. You do not think I want my notes, do you? Mr. Marshall, could you first tell us why this court has jurisdiction of an appeal that doesn't seem to raise patent issues except ownership, which is a state court issue? I would like to, Your Honor, but one of the things I was going to address today was that, excuse me, the Ver and Galasso's position on whether or not jurisdiction was proper has changed since the time when previous counsel removed this case to federal court. Excuse me. And we no longer believe that jurisdiction was proper. The reason… So you don't now believe that we have jurisdiction of this appeal? Yes, Your Honor, that's correct. Even though you were the ones, your client and his counsel were the ones that actually removed the case from state court to federal court? Yes, Your Honor, that's correct. When did you decide this? When did you come to this determination? Your Honor, I, I came to this determination. I, I was not the counsel that filed the removal to federal court, but when I took over the case, um, the, the district court had already assumed jurisdiction over the case and I did not give jurisdiction a hard look until we were filing the appeal to this case. When did you, when did you assume the case? What date? Um, I don't remember the exact date, Your Honor. Uh, it was after there was already a hearing, uh, with previous counsel, uh, on, on all issues and on a motion to, for sanctions against my client. There was no, I'm sorry, Your Honor. Do you think perhaps you had a duty to this court to inform us as soon as possible upon learning that you, you felt you had no jurisdiction, that this court had no jurisdiction? Yes, Your Honor, I do believe I had a duty to do that and I, I believe I did that as soon as I realized that jurisdiction was, was not proper. Uh, both, um, even opposing counsel right now in their briefs have noted that they believe that jurisdiction is proper because the, an issue under, uh, priority. Does that mean you just realized it recently, like today or yesterday? When is it that you came to the conclusion we had no jurisdiction? Your Honor, it was, it was when I was preparing these briefs and that's why I raised in the brief that, that this court needed to decide its own jurisdiction rather than simply making a jurisdictional statement. But you argued to the court that we had jurisdiction in the brief. Your Honor, I believe that the, the, the district court had acted as though it had jurisdiction and establishing a law of the case essentially. And to appeal this case, to appeal this case somewhere, this was the only court that I knew of that would have a basis for, for appeal because if the district court did not have jurisdiction under Section 1338, then this, if this court didn't have jurisdiction, then there's no other federal court that would have jurisdiction to hear the appeal either. And I believe that the, by assuming that the, uh, the law of the case was established, uh, in the district court, that, um, jurisdiction, uh, this was the proper place to file the appeal. So what do you think we should do? Transfer it to the Second Circuit with instructions that they instruct the district court to dismiss the case? Well, Your Honor, I believe that, that this court has authority to determine both its own jurisdiction and the jurisdiction of the district court below. So, I do believe that any, any appellate court could decide whether the district court had proper federal jurisdiction. Um. But if we don't have jurisdiction, the district court, the removal was necessarily wrong. Yes, Your Honor, because there was no diversity jurisdiction, the, the removal was simply because, uh, as, according to the pleadings filed by previous counsel and my understanding of the case, um, during the arbitration, there was, uh, heavily involved with issues related to ownership of the patent and not, but not just necessarily ownership of the patent, but even potentially, um, whether or not one of the, uh, patents was a continuation of one of the, uh, of a parent application. And because when the motion to confirm attached our final arbitration decision. So, if the final arbitration decision had or was necessary to consider those issues again in reaching a decision to confirm, then jurisdiction would have been proper. And I believe that that's what previous counsel felt. I, I do believe that that could be one issue, um. As in Christensen, I believe that, uh, patent jurisdiction might have been one issue on which the case could have been resolved, except that the pleadings that were actually filed in state court did not actually require resolution of a patent issue. Well, you mentioned, you mentioned Christensen v. Colt, which says that we shouldn't play ping pong. Yes, Your Honor. The case was removed to the federal court, comes up here, and so we send it back and, and play ping pong. Um, Christensen v. Colt said, under law of the case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end. Yes, Your Honor. That argues for, what, our hearing the case, the appeal? I'm sorry, I don't understand the question. To avoid this jurisdictional ping pong, if, if there is a plausible basis for our jurisdiction, shouldn't we keep it? Yes, Your Honor, because. You're saying there's no plausible basis. I personally, although it's not my decision to make, I personally do not believe there is a basis for jurisdiction. However, if this court does find that it has jurisdiction, then this would be the proper court. Was there a section 120 issue? Um, that was raised for the first time on appeal. However, that could have been one of the necessary elements required to, to resolve the arbitration issue. I do not believe that the section 120 issue was necessary at all to resolve, um, the, uh, well pleaded complaints, uh, that were filed in state court and then removed to federal court. The well, the complaints that were filed. As a matter of ownership, couldn't it well have been that section 120 could have very well played an important role in the ultimate decision? Because, uh, I guess he was involved. Mr. Imes was associated with Verve at the time he filed the 833 application. I don't know if I'm getting the number right. Um, but he, it was based as a, on a parent application that preceded his involvement with Verve. And under, uh, maybe some theory that, uh, Verve had a right to things that he filed during his relationship with them. Uh, wouldn't it matter whether we considered it as filed as of the parent date or filed as of the child's date? That could be one possible, one possible way to solve it. But I believe that it is not a necessary issue of patent law to resolve the, the claims as they were filed by the, by the, either the plaintiff or. You didn't think any of the claims in this case that required resolution by the court would have required, uh, deciding that point? That's correct, Your Honor. The, the claims that were, were at issue that were filed in state court by the plaintiff were confirmation of an arbitration award and breach of contract. You want to address the merits on the assumption we do have jurisdiction? Yes, Your Honor. Why was, why was there, uh, an appearance of partiality? This relates to Mr. Coates, right? Yes, Your Honor. And, and, and he was Iams' preferred arbitrator. Yes, Your Honor. It was expected that he would have some partiality, wasn't it? Well, Your Honor, um, not really. Um, although there are some cases in which each side selects a, a, um, an arbitrator that's expected to decide his way and then they choose a, a, a neutral arbitrator. In this case, it's clear that all three arbitrators were expected to be neutral. How, how is that clear? What? Excuse me, Your Honor. Let me find the, uh, there was an email, uh, opposing counsel that stated that they did, they wanted to make sure that Coates was not a captive arbitrator for Galasso. So, the fact that other side's counsel expressed their concern that Coates would be on Galasso's side, um, indicates that they expected him to be neutral. But there's nothing in the arbitration agreement, which is the contract between the parties, that suggests that the arbitrator that is chosen must be neutral and have no prior affiliation with the party, is there? No, Your Honor, there's not. There's also nothing that's to the contrary. Um, and, and Galasso was expecting all the arbitrators to be neutral and I believe the other side was too. Well, was there a, um, was there any reason to believe that one side had a right to object to the other side's selection of its individual arbitrator? No, Your Honor, the, we're not really, um, complaining about our ability to object to them because each side was given a, an opportunity to vet all of the arbitrators. Um, the, the issue that we're raising, especially with regard to arbitrator Coates, is that… But I guess that's the heart of what I'm getting at. Did you have any right to vet their selection of their particular arbitrator? Both sides acted as if they did. I don't think that that was, I'm trying to remember the exact, uh, arbitration agreement as to whether, uh, I think the arbitration agreement did give them the right for each side to pick an arbitrator and then, excuse me, to have those arbitrators pick a third arbitrator. Well, assuming, assuming we have jurisdiction, assuming you had a right to an impartial arbitrator, the one that they chose, under what facts do you think give rise to, um, your assertion that this arbitrator that they chose was not plausibly objective? Because at some point during the arbitration, opposing counsel referred work to that arbitrator and it wasn't disclosed until days before the arbitration, which is one of the reasons, not, perhaps not the main reason that was listed in the, uh, email, but that's one of the reasons why my client decided that he was not going to attend the arbitration hearing was because he was, he just thought he was being railroaded. And then, basically, referral of work to an arbitrator during an arbitration, that, this just doesn't smell right. Want to save the remainder of your time for rebuttal? Your Honor, I would like to briefly address, uh, the waiver issues, uh, that opposing counsel has raised. Um, one of those being that the fact that my client did not attend the, uh, final arbitration waived all of his rights to appeal. Um, the first, uh, at first I would like to address the fact that the, one of the rights to appeal, um, are statutorily granted and because we met the time requirements required by statute to appeal on the basis that we appealed, that those rights were not waived because they're statutory rights. The second of all, um, although there was not a formal, um, there was just an informal letter as to why my client was not going to attend the final arbitration hearing. Um, everyone present knew, based on that email, they knew that he was not going to attend and they were aware of the issues that he was concerned about, the partiality of the arbitrators. And one briefly, Your Honor, one other issue about the, uh, exceeding the authority. Um, the other issue that we brought up on appeal is that, uh, we believe that the arbitration panel exceeded its authority to, uh, by making a decision about a third party who is not a party to the arbitration. The, there's a lot of talk about arbitration panels being able to do things that courts cannot do. Um, and that is true. They can do some things that courts cannot do. That does not mean they can do everything that courts cannot do. Arbitration panel's authority is generally based on contract, um, and as, uh, the PAMR, the agreement that was being arbitrated. Um, it has been characterized that the parties agreed to arbitrate everything arising out of the PAMR. That's not technically correct. What they agreed to arbitrate was everything arising out of the negotiation of the PAMR and everything, uh, that arose out of the enforcement of rights under the PAMR. And I'll say the remainder of your time. Thank you, Your Honor. Mr. Vickery. Thank you, Your Honor. No doubt you'll address the jurisdictional issue first. No, well, Your Honor, if I might, I will unquestionably turn to jurisdiction and I will unquestionably plan to spend the bulk of my argument on that. However, given what the court has just heard, I believe it's appropriate, if you'll indulge me just for a minute or two, to put what you just heard into context. These, there's a long, long history of litigation with these parties. In 2007, they entered a settlement agreement trying to put these issues to bed. When they defaulted on their obligations, we initiated an arbitration proceeding. Immediately, they filed a counterclaim seeking an interest in my client's patents. And they said, everything belongs in arbitration. With all due respect, I don't see how this has anything to do with the case in front of us, and I really think you should turn to jurisdiction. Okay, Your Honor, I believe that it has relevance to the sanctions issue, but if you want me to return to jurisdiction, then that's exactly where I will go. When Verve and Galasso first removed this case to federal court, they acknowledged that the central claim was that defendant Verve has no rights in or to patents or rights relating to patents. Joint Appendix 28. In Paragraph 8 of the Notice of Removal, they said, Counsel, do you believe that this court has jurisdiction or not? This court does have jurisdiction, Your Honor. That it does? It does. On what basis? I'm turning to that, Your Honor. What they said in the Notice of Removal was right in the big picture. It was wrong in the detail. What they said in their Notice of Removal was that our petition, which basically sought confirmation of an arbitration award, gave this court jurisdiction. That's not right. What gave this court jurisdiction is that they had filed a counterclaim that necessarily depended on whether the assets and property that was the subject of their counterclaim belonged to Verve or belonged to my client individually. That's the basis of federal jurisdiction in this case, Your Honor. What's the patent law question in what you just said? The patent law question in what I just said is something that Judge Moore alluded to earlier, Your Honor. It's undisputed in this case that the business of Verve is to acquire patents. It's undisputed that what we're talking about is the family of patents in which the 833 patent belongs. It's undisputed that Russell White and Kevin Imes were the co-inventors of that property. And it is undisputed that the prior settlement agreement set forth a definition of Verve assets and property that excluded Imes' individual property. What's the federal issue, the patent law issue, at play here? You're describing contractual issues or the basis for that. The patent law issue that is at play, Your Honor, is that the parent application to which all these family of patents claims priority was filed four years before my client became a member of Verve. The continuation application on which the 833 patent issued was filed several months after he became a member of Verve. Now, therefore, the ultimate resolution, and actually in the reply brief on pages 10 to 11, the appellants talk about this whole situation. Hey, there's an ongoing office action, and that's what this court, if you want to take judicial notice of the filing date and the priority date, you can do that. But don't turn to the merits. That's exactly the point. The merits will be determined by the U.S. Patent and Trademark Office. That's the issue of federal patent law. It's whether or not the claims relate back to the parent application filed in 2000, or whether the priority is not granted, and therefore, Verve can make its prima facie case, that this was arguably a business opportunity of Verve. I didn't see any of that in the briefs, entitlement to a priority date. Your Honor, I believe it's in our brief. I believe it's in the jurisdictional statement. That's where we cited to 35 U.S.C. You mean an argument of entitlement to a priority date pointing out what's in a prior application? I mean, that's an issue of patent law. Right. Yes, Your Honor. I believe that in the jurisdictional statement in our brief, we specifically pointed that out, and we asked the court to take judicial notice of the filing dates on the application. What this appeal is about isn't found in the jurisdictional statement. It's found in the body of the brief and the statement of the issues. Yes, sir, but the jurisdictional statement has to inform the court whether it has jurisdiction, and that's exactly what we attempted to do. The issue in this case, and let me be clear, if the only claims in the lawsuit were our motion to confirm the arbitration award, their motion to vacate the arbitration award, there'd be no federal jurisdiction over that under Christensen v. Colt, even though there were patent issues that were decided in the arbitration. What makes this different is that after the arbitration, they filed a counterclaim that was based on the business opportunities of Verve that necessarily turns on a determination of whether the business opportunity belonged to Verve or belonged to my client. That's the part I don't understand. Did it necessarily? It seemed to me that it turned on the settlement agreement, didn't it? I mean, it turned on the language of the settlement agreement, and there's nothing in that language that says, well, anything you invented or filed on during your time with us is ours. Anything that came before or after is yours. It turned on interpretation of a contract, contract interpretation. Well, Your Honor, what it said is that Verve assets and properties do not include, quote, any patents and patent applications owned by Iams individually and not obtained by Iams as a result of Iams' role as a member of Verve. So I think that contractually, it does differentiate between Verve property and between Iams' property, and that's exactly the issue in determining whether the business opportunity in their counterclaim relates to Verve or relates to Iams. I'm sorry. I didn't understand your answer. Try one more time. Okay. I thought that your point, Your Honor, was that there's nothing in the agreement that specifies what goes to Verve and what goes to Iams. And the agreement does say that. It says that Verve has no interest in anything that's owned by Iams individually. Right. So this is owned by Iams individually. And so how is there – why do they – and it's owned by Iams whether it gets the benefit of the priority date of the parent or whether it gets the benefit of the date of the continuation. So why would any court have to resolve what the priority date is in order to figure out whether this is owned by Iams? Their position all along has been that if it occurs during Iams' membership, that it does belong to them. So that's exactly the position that they've taken throughout, Your Honor. Where do they make that argument? That has been – that's underlied their arguments all along, Your Honor. I can't point you to a specific place, but I can tell you – Does their counterclaim expressly say that they have a right to ownership of this patent? Does it give a reason, articulate why? I don't have the counterclaim in front of me and I don't recall. What basis do they assert for ownership? They don't assert a basis for ownership. The counterclaim, Your Honor, is frankly – frankly doesn't mention patents. It does not mention patent law. But as Justice Brennan wrote in footnote 3 to Christian – Well, what does it mention? Excuse me, Your Honor. What does their counterclaim mention? Or where in the record is it? Their counterclaim is in the record at Appendix 46 forward. And what it talks about is usurping business opportunities. Now, I think, Your Honor, I think this was part of your question, so let me make sure. When you talk about, look, this is determined by – contractually by the PAMR, certainly we think that's – there's no question that we think we have at least two defenses in this case that are dispositive. Collateral estoppel based on the arbitration panel's award and release. But the defenses aren't what we're looking at to determine federal jurisdiction. What we're looking at – and that's clear from the Christensen opinion, I think. What we're looking at to determine federal jurisdiction is the allegations in the counterclaim. Right, and I'm just trying to appreciate where there's an allegation in the counterclaim that would actually implicate a substantial question of federal patent law. And I'm not understanding it. So I'm on J850, which is the only portion, I think, of the – I think we only have two pages of the counterclaim, 50 and 51. And so tell me which language and what we have. Your Honor, I think that the petition fairly read is summed up in paragraph 12, which is on page 48 of the joint appendix. It says, while Imes was a member, owner, and a person – I don't have – I'm sorry, but I don't have a page 48 of the joint appendix. It's not part of the appendix. My appendix goes from page 44 to 50. You all selected the portions that you thought were important for us and included them in the appendix. So the entire counterclaim is not before the court. Correct. All I have is page 40. I have page 50 and page 51. Now, technically, if it's a part of the record, it can be, but you certainly didn't give it to us, which might explain why I'm having trouble following your argument. And I apologize for that, Your Honor. At the time that we wrote our briefs, no one had raised jurisdiction. They were saying there was jurisdiction. The district court assumed jurisdiction. We assumed jurisdiction. Well, that's a good answer for why it's not there. I understand now why it's not there. So why don't you read me what you say is the relevant portion, and then maybe we can acquire it if we need it. The grovelman of the counterclaim, Your Honor, is what's embodied in paragraph 12. While Imes was a member, owner, and or principal of Verve, Imes, along with White and or those with the White companies, devised a common goal to usurp and did usurp Verve's business opportunities for their own gain. That's the central issue. The grovelman of the counterclaim is that the- It doesn't sound like a patent issue, but correct me if I'm wrong. Didn't the Supreme Court hold that a counterclaim does not create patent jurisdiction? Your Honor, I'm not aware. A defense can't create patent jurisdiction if the claim doesn't create patent jurisdiction, but I think a freestanding counterclaim can. It's certainly my understanding, and I've cited- I know I've cited a case for that proposition, the Schwarzkopf case from this circuit in 1986. So unless that case has been overruled, I'm not sure- The Guarnado, maybe? That's why I was just going to look it up. The Guarnado. And so obviously, if a counterclaim can assert jurisdiction, then the arguments fall apart. And I can't possibly stand before the Court of Accounted Candor and tell you otherwise. But the reason that we did not file a motion to remand when they removed this case to federal court was because everybody understood that what this case was about was their efforts to gain an interest in my client's individual property. And so when they're talking about the business opportunities of Verve, it necessarily turns in their prima facie case on whether they can make the case that it could potentially be Verve's business opportunity, or whether it related back to four years before my client even became a member of Verve, in which case it couldn't be. Therefore, to make their prima facie case, it necessarily depends on patent law, and specifically on Section 120. The other possibility would be an assignment scenario. Assignments, of course, are also subject to patent law in Section 261. Did you brief these arguments? The jurisdictional arguments? The arguments you're making here, yes. Your Honor, I didn't brief it. As I say, they said there's jurisdiction. The district court said there's jurisdiction. We believe there's jurisdiction. So other than just making the plain statement that we did in the jurisdictional section of our brief, we didn't do any extended briefing. But certainly those arguments are preserved in our jurisdictional statement. So that's the basis for jurisdiction, Your Honor. The business opportunity, whether in the first instance it belonged to Verve. Do you want to spend your remaining two minutes on the merits? Yes, Your Honor. The partiality of the arbitrator? The partiality of the arbitrator, the easy answer to that, Your Honor, is that it was disclosed. The only evidence in the record is at the first in-person hearing with the arbitrators that all the issues that they now raise as grounds for bias were discussed. They were discussed with me, I was counsel for Imes, and with counsel for Verve and Galasso sitting there with all three arbitrators. We discussed the fact that the day before that in-person meeting, there had been a mediation where I had referred a friend. I said you might want to call Will Coates to get your mediation taken care of, to get this dispute resolved. And we all discussed that very openly because the mediation had been the day before. All of it was discussed, but in truth it didn't matter. They never filed any objection based on bias anyway. As joint appendix page 10, the panel confirms there was never an objection filed on bias. And they keep saying that the district court didn't find that their failure to appear at the arbitration hearing didn't constitute waiver. What the district court writes at appendix page 396 is rather than make a record of their objections and partiality concerns, defendants didn't appear. Joint appendix 5, the court again says, finally the court again notes defendants deliberately failed to attend the final arbitration hearing and thus failed to raise any of these claims, arguments, or evidence to the panel itself. Is there significance in the fact that all three of the arbitrators found in favor of your client? I think so, Your Honor, and the district court did too. It's a unanimous decision by all the arbitrators finding that all of the claims had been released. Furthermore, as the court can see in the award, at the beginning of the arbitration hearing before any hearing on the merits, each of the arbitrators, each set of two arbitrators, evaluated the partiality of the third arbitrator, in each instance all three of them, even though there had been no formal objection based on bias or evident partiality. Thank you, Mr. Vickery. Thank you, Your Honor. Mr. Marshall, I think you have less than two minutes. We'll give you two minutes to rebut. Thank you, Your Honor. First, as far as the counterclaim to creating jurisdiction, federal jurisdiction, I believe that the way it's supposed to go is that counterclaims in a state court can't be used to remove the federal court, but once you're in federal court, based on diversity jurisdiction, as in Christensen, I think this was, or no, Schwarzkopf, as the opposing counsel quoted, once jurisdiction was already established based on diversity, then patent claims could have, although in that case they found they did not for some other reasons, patent claims could give rise to federal jurisdiction if the federal court already has jurisdiction from some other basis. The evidence in the record saying that the referral had been disclosed, it vaguely mentions that there was some informal discussion, some laughing, and that they discussed that some arbitration was done the day before. There's no record, nothing in the record that says that the referral of the mediation was discussed with anyone. That is at, the affidavit in question is at JA-286. And as far as whether or not there was the duty to, excuse me, the counterclaims, if they are deemed to provide jurisdiction, usurping a business opportunity is what the claim says, and it can be proven by many different ways other than invoking a substantial question of federal patent law. And that's all I have, Your Honors. Thank you, Mr. Marshall. Case will be taken under advisement.